FILED
U.S. DISTRICT COURT
...
2007 JUN -6 A 11: 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

DEXTER SHAW,

  Plaintiff,

vs.

TRELLIS DODSON; ABBIGAIL
COWART; HUGH SMITH, Warden,
and FRED BROWN,

  Defendants.

CIVIL ACTION NO.: CV604-122

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at Georgia State Prison ("GSP") in Reidsville, Georgia, has filed an action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement. Defendants Trellis Dodson, Abbigail Cowart, Hugh Smith, and Fred Brown ("Defendants") filed a Motion for Summary Judgment. Plaintiff filed a Response. For the following reasons, Defendants' Motion for Summary Judgment should be **GRANTED**, in part, and **DENIED**, in part.

## STATEMENT OF THE CASE

Plaintiff contends that Defendant Dodson closed his arm in a cell door, causing him injuries. Plaintiff also contends that Defendants Dodson and Cowart filed false disciplinary reports against him. Plaintiff further contends that Defendant Smith knew that Defendant Dodson was a threat to his safety but failed to protect Plaintiff. Plaintiff

asserts that Fred Brown, the former Warden of Security at Georgia State Prison, was aware of threats to Plaintiff's safety and ignored those threats.

Defendants assert Defendant Dodson did not open or close a cell door to any inmate's cell, including Plaintiff's, on the date in question. Defendants also assert Defendant Dodson did not witness Plaintiff's handcuffs getting caught by a cell door hook. Defendants contend Plaintiff's institutional medical records do not indicate he requested any treatment for injuries until a week after he was allegedly injured. Defendants aver Defendants Smith and Brown were not aware at the time of this alleged incident that Plaintiff claimed an officer, particularly Defendant Dodson, posed a danger to his safety. Finally, Defendants allege disciplinary reports were written against Plaintiff because he violated the prison's rules. Defendants assert they are entitled to summary judgment on all of Plaintiff's claims.

## STANDARD OF DETERMINATION

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part[ies are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

2

of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The moving parties bear the burden of establishing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION OF AUTHORITY

I.      **Plaintiff's Excessive Force Claims.**

Defendants contend there is no evidence to support Plaintiff's claim that Defendant Dodson closed the cell door on him and caused him injuries. Defendants assert Defendant Dodson was working as the hall officer at the time of the alleged incident and did not have permission as the hall officer to control the cell doors in the unit. Defendants assert, even assuming Defendant Dodson did close the cell door on Plaintiff, there is no evidence which suggests she did so maliciously or sadistically to

3

cause Plaintiff harm. Defendants further assert Plaintiff did not seek medical treatment for any alleged injuries until one week after Defendant Dodson purportedly closed the cell door on Plaintiff.

Plaintiff asserts he was returning to his cell after taking a shower, and Defendant Dodson was working the control room "cage" in the unit in which Plaintiff was housed. Plaintiff contends he waited in front of his cell door for Defendant Dodson to open the door completely, and when she did not, he entered his cell by going in sideways. Plaintiff also contends he was looking at Defendant Dodson the entire time and was not being hostile or insubordinate. However, Plaintiff further asserts, Defendant Dodson closed the cell door on him. Plaintiff alleges his handcuffs were caught on the cell door, he could not get free, and Defendant Dodson laughed at him. Plaintiff contends he suffered injuries as a result of being caught in the cell door. Plaintiff avers Defendant Dodson admitted to closing the cell door on him. (Pl.'s Br., p. 5.)

The Eighth Amendment's prohibition against the use of cruel and unusual punishment governs the amount of force that a prison official is entitled to use. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than a good-faith effort to maintain or restore discipline. Whitley v. Albers, 475 U.S. 312, 320-21, 106 S. Ct. 1078,

4

1085, 89 L. Ed. 2d 251 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, the following factors are relevant: the need for the exercise of force, the relationship between the need for force and the force applied, and the extent of injury that the inmate suffered. Id. at 321, 106 S. Ct. at 1085.

Defendant Dodson admits she was working in the unit in which Plaintiff was housed on the date in question; however, she denies she was working in the control room on this date. According to Defendant Dodson, she did not have permission as the hall officer to control the cell doors in Plaintiff's unit. Defendant Dodson states she did not prepare an incident report on this matter, "which indicates that [she] never witnessed or participated in [Plaintiff's] handcuffs allegedly getting caught in the cell door." (Dodson Aff., ¶ 3.)

On the other hand, Plaintiff asserts, although Defendant Dodson was assigned as the hall officer on the date in question, she was running the control room when he was going back to his cell after his shower. (Doc. No. 253, p. 6.) Plaintiff's evidence reveals Defendant Dodson did not open his cell door to allow him access to his cell other than by walking sideways through the door, and that Defendant Dodson laughed after he was caught in the cell door. Plaintiff also asserts Defendant Dodson announced to the entire unit that he was a "snitch" prior to Plaintiff leaving his cell to shower. (Doc. No. 23, p. 5.) Plaintiff has submitted statements from fellow inmates which indicate Defendant Dodson was controlling the cell doors at the time Plaintiff was caught in his cell door or that she admitted to closing the cell door on Plaintiff. (Pl.'s Ex. 5, p. 2; Pl.'s Ex. 15, p. 1; Pl.'s Ex. 17.)

5

There is conflicting evidence as to whether Defendant Dodson was controlling the cell doors at the time Plaintiff's door was allegedly closed on him. The fact that Defendant Dodson did not prepare an incident report on this matter does not necessarily mean she did not close the door on him or witness the cell door closing on Plaintiff; this only means she did not write an incident report. The evidence also reveals that, although there is no record of Plaintiff being in the medical unit immediately after this alleged incident, there is evidence that Plaintiff complained about his arm and shoulder beginning the next week due to getting caught in a cell door. Plaintiff and his fellow inmates contend Plaintiff said he needed medical attention after this alleged incident because he had a cut on his torso and his arm was hurting him. Additionally, Plaintiff ended up having surgery on his shoulder due to a torn rotator cuff. (Defs.' Ex. C, pp. 11, 13, 32; Defs.' Ex. C1[which is the same as Ex. C, p. 13].) Thus, the record presents genuine issues of material fact which preclude the granting of summary judgment to Defendant Dodson on this claim.

## II. Plaintiff's Failure to Protect Claims.

Defendants allege Defendants Smith and Brown were not aware of a threat to Plaintiff's safety at any time prior to the alleged incident. Defendant Smith admits he received a letter dated about a week and a half before the incident but did not take any action to immediately investigate the matter because Plaintiff did not identify a specific officer who was threatening imminent physical harm. Defendants also allege there is no evidence Defendants Smith or Brown were aware of Grievance Number 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, in which Plaintiff complained of being assaulted by Defendant Dodson, prior to the date of the incident at issue.

AO 72A
(Rev. 8/82)

Plaintiff contends he forwarded three (3) letters to Defendants Smith and Brown in which he informed them that Defendant Dodson posed a threat to his safety. In fact, Plaintiff asserts, Defendant Smith admitted he knew of Defendant Dodson's alleged threat to his safety prior to the incident. Plaintiff also contends he filed an emergency grievance detailing Defendant Dodson's threats toward him. Plaintiff asserts Defendants Smith and Brown received all of his letters, despite their contentions to the contrary.

The Eighth Amendment imposes a duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 811 (1994) (citations omitted). Thus, a prison inmate has a constitutional right to be protected from the threat of violence and from physical assault. See Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986). In order to state a section 1983 cause of action against prison officials in this regard, however, a plaintiff must allege at least some degree of conscious or callous indifference on the part of officials. Id. (citing Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982)). Only where there is "a strong likelihood, rather than a mere possibility[,]" of a known risk of injury does a correctional officer's failure to act amount to deliberate indifference. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (quoting Edwards v. Gilbert, 867 F.2d 1271, 1276 (11th Cir. 1989)). In Hopkins v. Britton, 742 F.2d 1308, 1310 (11th Cir. 1984), the court similarly suggested that the knowledge of danger, coupled with the failure to act, might warrant a finding of deliberate indifference.

AO 72A
(Rev. 8/82)

Defendants Smith and Brown deny they had any knowledge that Defendant Dodson allegedly threatened Plaintiff prior to August 27, 2003. Nonetheless, Defendant Smith admits to receiving a letter from Plaintiff a week before the alleged incident and did not investigate Plaintiff's allegations because Plaintiff "did not identify any specific officer who was threatening imminent physical harm to him." (Smith Aff., ¶ 5.) Additionally, Defendant Smith admitted he had knowledge of Defendant Dodson's threats to Plaintiff prior to August 27, 2003. (Pl.'s Ex. 12, p. 4, No. 16.) Defendant Smith denies receiving a letter from Plaintiff dated August 19, 2003, in which Plaintiff alleges Defendant Dodson threatened him, but Plaintiff asserts he sent this letter to Defendant Smith. (Doc. No. 253, p. 2; Ex. 1 attached to Defs.' Ex. A.) Though Plaintiff does not identify Defendant Dodson in his letter dated August 20, 2003, Plaintiff refers to the letter written the day before which does identify Defendant Dodson. (Ex. 2 attached to Defs.' Ex. A.) There is a question as to whether Defendant Smith received both of these letters or just the later-dated one. Plaintiff has presented evidence that genuine issues of material fact exist as to whether Defendant Smith was aware of Dodson's purported threat to Plaintiff's safety prior to August 27, 2003, and failed to take protective measures.

In contrast, Defendant Brown denies receiving a letter from Plaintiff dated August 25, 2003. Although a copy of a letter dated August 25, 2003, is attached to a copy of the transcript of Plaintiff's deposition (Ex. 4 attached to Defs.' Ex. A), Plaintiff offers nothing to support the allegation set forth in his brief in opposition to Defendants' Motion for Summary Judgment that Defendant Brown received this letter. A party opposing a motion for summary judgment cannot rest on mere allegations alone. Plaintiff has failed

to create a genuine issue of material fact as to whether Defendant Brown was made aware of any threat to Plaintiff's safety prior to August 27, 2003. (Brown Aff., ¶ 3; Doc. No. 253, p. 5.)

### III. Plaintiff's Retaliation Claims.

Defendants allege the undersigned permitted service of Plaintiff's Complaint based in part on his claim that Defendants Cowart and Dodson retaliated against him for filing grievances. Defendants assert the evidence on Plaintiff's retaliation claim should be limited to these parameters. Defendants also assert that Plaintiff testified during his deposition that he did not file a grievance against Defendant Cowart; accordingly, his retaliation claim against Defendant Cowart should be dismissed. Likewise, Defendants contend Plaintiff's retaliation claim against Defendant Dodson should be dismissed, as well. Defendants assert Defendant Dodson wrote two (2) disciplinary reports against Plaintiff prior to his filing a grievance against her. Defendants also assert Defendant Dodson was not aware Plaintiff filed any grievances against her until after she learned of the instant cause of action.

Plaintiff asserts that, after Defendant Dodson began working in his unit in 2003, they "became personally acquainted and began writing letters to one another and acts of exhibition." (Pl.'s Br., p. 34.) Plaintiff contends he and Defendant Dodson had an argument on August 19, 2003, because another officer and an inmate told Defendant Dodson that Plaintiff had gotten another officer fired. Plaintiff also contends Defendant Dodson approached him later that day to apologize to him and to offer to bring him drugs. Plaintiff alleges he wrote a letter to another officer, which was given to Defendant Dodson, complaining about Defendant Dodson's actions. Plaintiff also

9

alleges he wrote Defendant Smith a letter that same day and informed him of Defendant Dodson's "personal dealings" and trying to get him "set up" for having drugs. (Pl.'s Br., p. 35.) Plaintiff avers he was served with a disciplinary report the next day, and he alleges Defendant Dodson wrote this report in retaliation for attempting to tell another officer about Defendant Dodson's alleged actions and to cover up her activities. (Id.) Plaintiff contends a few days later, Defendant Cowart told him not to "mess with Dodson." (Id.) Plaintiff asserts Defendant Cowart fabricated a disciplinary report against him, alleging that Plaintiff was walking aggressively toward her. Plaintiff contends he filed a grievance on August 25, 2003, pertaining to Defendant Dodson's "personal dealings, threats, and sexual harassment." (Pl.'s Br., p. 36.) Plaintiff asserts he wrote a letter to Defendant Brown that same day about condoning and covering up Dodson's actions. Finally, Plaintiff asserts Defendant Dodson closed the cell door on him on August 27, 2003, in retaliation for the above-described allegations.

"To state a First Amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal citations omitted). Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." Id. A prisoner can establish retaliation by demonstrating that the prison official's actions were "the result of his having filed a grievance concerning the conditions of his imprisonment." Id.

Once a defendant moves for summary judgment, "the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Crawford-El v. Britton, 523 U.S. 574, 600, 118

10

S. Ct. 1584, 1598, 140 L. Ed. 2d 759 (1998). The issue of intent is a question for the trier of fact. Direct evidence of an illegal motive will usually suffice to create a genuine issue of fact and preclude summary judgment. Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995) (citing Swint v. City of Wadley, Ala., 51 F.3d 988, 1000 (11th Cir.1995)).

Defendant Dodson wrote two (2) disciplinary reports against Plaintiff. Disciplinary Report Number 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 was written on August 19, 2003, and Disciplinary Report Number 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 was written on August 20, 2003. (Defs.' Ex. I, p. 3; Ex. K, p. 7.) Plaintiff filed Grievance Number 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, in which he complained of Dodson's alleged actions against him, on August 25, 2003. (Defs.' Ex. G.) On August 27, 2003, Plaintiff filed Grievance Number 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, and he alleged Defendant Dodson purposefully closed his cell door on him. (Defs.' Ex. H.) This evidence does not support Plaintiff's allegations that Defendant Dodson retaliated against him for filing a grievance against her. Defendant Dodson filed two (2) disciplinary reports against Plaintiff *before* he filed a grievance against her. Even accepting as true Plaintiff's contention that he wrote Defendants Smith and Brown letters about Defendant Dodson prior to the disciplinary reports and she had knowledge of these letters, Plaintiff's retaliation claim against Defendant Dodson fails. Plaintiff had not filed a grievance or lawsuit prior to the issuance of these disciplinary reports. Additionally, Plaintiff's assertion that Defendant Dodson closed him in his cell door as a retaliatory action is undermined due to the complete lack of evidence that Defendant Dodson was aware of Plaintiff's grievance, which was filed two (2) days before she purportedly closed the cell door on him. (Dodson Aff., ¶ 6; Pl.'s Ex. 2, p. 6.)

11

Likewise, there is no evidence Defendant Cowart was aware of any complaints Plaintiff may have made against Defendant Dodson or any other member of the prison staff prior to her filing Disciplinary Report Number 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 on August 23, 2003. (Defs.' Ex. M, p. 3; Pl.'s Ex. 11, p. 4; Defs.' Ex. L.) In short, Plaintiff fails to set forth evidence sufficient to overcome his burden of showing that he exercised a constitutionally protected right (i.e., filing a grievance or lawsuit) and that Defendants Dodson and Cowart took action against Plaintiff in response.

## IV. Plaintiff's Due Process Claims.

Defendants allege Plaintiff served a sentence of nine months' disciplinary segregation plus 30 days' store restriction on two (2) disciplinary reports and six months' disciplinary segregation plus 30 days' store restriction on a third disciplinary report. The sentence Plaintiff received on the third disciplinary report was expunged at a later date. Defendants also allege Plaintiff had the same privileges as the inmates in general population except for his 30 day store restrictions. Defendants state Plaintiff cannot show he suffered an atypical and significant hardship as a result, and they are entitled to summary judgment on this basis. Defendants contend the evidence "clearly demonstrates" Plaintiff received written notice of the charges filed against him more than 24 hours before the hearings in the disciplinary reports. Defendants also contend Plaintiff's requested witnesses were interviewed but not called to testify at the hearings because they were not helpful to his defense or could not be reached to testify on Plaintiff's behalf. Defendants further contend Plaintiff received a written statement of the findings of fact for each disciplinary report. Finally, Defendants contend there was "ample evidence" to support the hearing officers' findings of fact. (Defs.' Br., p. 17.)

12

Plaintiff asserts he was improperly assessed with a $4.00 fine for each of the guilty charges imposed against him. Plaintiff also asserts the imposition of disciplinary segregation was not warranted. Plaintiff contends the fines deprived him of his property and the segregation deprived him of his liberty. Plaintiff avers Defendants' actions subjected him to atypical and significant hardships. Plaintiff also avers he was denied fundamental steps in the procedure and creating a defense because "insufficient and falsely created statements were submitted by the Office of Inmate Discipline personnel and accepted throughout the appeals process." (Pl.'s Br., p. 14.) Plaintiff asserts the Disciplinary Hearing Officer in Disciplinary Report Number 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 told him he would have "to do without" Officer Johnson in this hearing because her phone was disconnected. (Pl.'s Br., pp. 14-15.) In fact, Plaintiff states he was not permitted to call his witnesses at any of the hearings. Plaintiff also asserts he was improperly found guilty of the alleged disciplinary violations because insufficient evidence was used and he was denied witnesses. Plaintiff further asserts the findings of guilty in these hearings are not supported by "some evidence" as required by law. Plaintiff contends the hearing officer was not impartial, as is he required to be. Plaintiff also contends he was not advised of the penalty he faced if he were found guilty, nor does the applicable Standard Operating Procedure support the giving of the penalty he received. Plaintiff further contends he was not notified of the charges pending against him within 24 hours of the discovery of the infractions with which he was charged.

"The Due Process Clause protects against deprivations of 'life, liberty, or property without due process of law.'" Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999) (quoting U.S. CONST. amend. XIV). "[T[hose who seek to invoke its

13

procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 2393, 162 L. Ed. 2d 174 (2005). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty', or it may arise from an expectation or interest created by state laws or policies." Id. (internal citations omitted). In other words, there are two situations in which a prisoner can be deprived of liberty such that the protection of due process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Kirby, 195 F.3d at 1290-91 (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed.2d 148 (1995)).[1]

If it is determined that a plaintiff has established a liberty interest, the question becomes what process is due to a plaintiff. Wilkinson, 545 U.S. at 224, 125 S. Ct. at 2395. Constitutionally adequate process requires compliance with the minimum due

---

[1] In Sandin, the United States Supreme Court addressed whether the punishment inmate Conner received for a disciplinary violation was sufficient to invoke a liberty interest protected by the Due Process Clause. 515 U.S. at 472, 115 S. Ct. at 2293. Following a disciplinary conviction, Conner received 30 days' disciplinary segregation in a Special Housing Unit. Id. at 475, 115 S. Ct. at 2296. After noting that the segregation was a form of punishment, the Court concluded that it was not a dramatic departure from the conditions of Conner's indeterminate sentence. Id. at 485, 115 S. Ct. at 2301. The Court determined that the conditions of disciplinary segregation at the prison where Conner was incarcerated were virtually indistinguishable from the conditions of administrative segregation and protective custody. Id. at 486, 115 S. Ct. at 2301. Also, the Court noted that the conditions of disciplinary segregation were not markedly different from the conditions in general population. Id. The Court concluded that the conditions of disciplinary segregation did not impose an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. Thus, the Court determined that Conner was not entitled to due process protection. Id. at 487, 115 S. Ct. at 2302.

14

AO 72A
(Rev. 8/82)

process protections accorded to an inmate in prison disciplinary proceedings: (1) the right to receive written notice of the charges against him at least 24 hours before his hearing; (2) the right to call witnesses and present documentary evidence, where doing so would not be unduly hazardous to institutional safety or correctional goals; and (3) the right to receive a written statement setting forth the disciplinary committee's findings of fact. Wolff v. McDonnell, 418 U.S. 539, 563-66, 94 S. Ct. 2963, 2978-80, 41 L. Ed. 2d 935 (1974). In addition, the Supreme Court has held that a finding of "some evidence" in the record to support the decision of a prison disciplinary board is necessary to satisfy the requirements of due process. Superintendent, Massachusetts Corr'l Inst. v. Hill, 472 U.S. 445, 455, 105 S. Ct. 2768, 2774, 86 L. Ed. 2d 356 (1985). The determination of whether the standard is satisfied merely requires inquiry into "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455, 105 S. Ct. at 2774.

Plaintiff received 18 months' disciplinary segregation as punishment in each of the two unexpunged Disciplinary Reports—6 months' for each of the three (3) charges in each of the reports for which he was found guilty. Plaintiff also received 30 days' store restriction for each of these reports. (Defs.' Ex. K, p. 3; Ex. M., p. 3.) In actuality, Plaintiff only served 9 months as to each of these sentences. (Strickland Aff., ¶¶ 3, 5.) According to Defendants, Plaintiff had the same privileges as the inmates in general population, with the exception of the store restriction. (Strickland Aff., ¶ 6.) However, the Court can not conclude that Plaintiff having to serve a total of 18 months in disciplinary segregation does not represent an "atypical and significant hardship" on Plaintiff. Plaintiff has established the existence of a liberty interest which would

15

preclude granting summary judgment to Defendants at this point; however, Plaintiff cannot overcome his burden to establish the existence of a material fact as to whether he was not afforded all the process due to him.

Three disciplinary reports were issued against Plaintiff during the relevant time period: Numbers 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, 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, and 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. (Defs.' Exs. I, K, and M.) Plaintiff was found guilty on all of these reports.[2] Report Number -4250 was written against Plaintiff on August 19, 2003, by Defendant Dodson, and Plaintiff was charged with insubordination, soliciting sexual activity, and threatening (verbally or through gestures). Plaintiff was served with these charges on August 20, 2003, and the hearing on these charges was conducted on September 19, 2003. (Defs.' Ex. I, p. 19.) Plaintiff requested as witnesses Remer Johnson and Lieutenant Joiner, and these two provided statements to Plaintiff's advocate. Plaintiff also requested Defendant Dodson's presence at the hearing, and she provided a statement as well. (Defs.' Ex. I, pp. 4, 6-8.) Johnson and Joiner were not called as witnesses at the hearing because these witnesses "would be non-supportive of [Plaintiff's] defense." (Defs.' Ex. I, p. 17.) Eric Hemphill, the Disciplinary Hearing Officer, found Plaintiff guilty of the charged offenses based on the factual statement and investigative summary (which was based, in part, on the witnesses' statements). (Defs.' Ex. I, p. 3.)

Plaintiff received notice of the charges in Number -4250 more than 24 hours prior to the hearing on these charges. Plaintiff had the opportunity to call witnesses, although these witnesses did not testify during the hearing. These witnesses provided

---

[2] Report Number -4251 was expunged because witness statements were not obtained from Plaintiff's requested witnesses, in contravention of policy. (Defs.' Ex. K, p. 4.) Accordingly, the undersigned will not address this report in any more detail.

16

statements during the investigative process; given the witnesses' statements, they were not called to testify because they would not have been supportive of Plaintiff's defense. This is a permissible reason not to call witnesses at a disciplinary hearing. (Pl.'s Ex. 1, p. 21.) The hearing officer's finding of guilt was based on evidence before him. Finally, Plaintiff had the opportunity to receive a copy of the written findings. (Defs.' Ex. I, p. 2.) Thus, Plaintiff has failed to establish his right to due process was violated.

Defendant Cowart wrote Disciplinary Report Number 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 against Plaintiff for insubordination, failure to follow instructions, and threatening (verbally or through gesture) on August 23, 2003, and Plaintiff was served with a copy of the report the same day. (Defs.' Ex. M, p. 3.) The hearing occurred on September 22, 2003. Plaintiff requested as witnesses at the hearing Officer Hall, Sergeant Smith, Defendant Cowart, and S. Hall. These individuals provided statements to Plaintiff's advocate, with the exception of S. Hall, who could not be contacted at the time of the investigation because she was off that day. (Defs.' Ex. M, pp. 4, 8-11.) The other three (3) witnesses Plaintiff requested to have at this hearing were not called, as their statements indicated they would be "non-supportive of [Plaintiff's] defense." (Defs.' Ex. M, p. 14.) Plaintiff was found guilty of these charges based on the factual statement and the investigative summary. (Defs.' Ex. M, p. 3.)

Plaintiff received notice of the charges in Number -4298 more than 24 hours prior to the hearing on these charges. Plaintiff had the opportunity to call witnesses, although these witnesses did not testify during the hearing. These witnesses provided statements during the investigative process. Given the witnesses' statements, they were not called to testify because they would not have been supportive of Plaintiff's

AO 72A
(Rev. 8/82)

defense. This is a permissible reason not to call witnesses at a disciplinary hearing. (Pl.'s Ex. 1, p. 21.) The hearing officer's finding of guilt was based on evidence before him. Finally, Plaintiff had the opportunity to receive a copy of the written findings. (Defs.' Ex. M, p. 2.) Thus, Plaintiff has failed to show his right to due process was violated.

### V. Defendants' Qualified Immunity Claim.

Defendants assert they were acting within the scope of their discretionary authority, and their conduct was within the scope and course of their duties. Defendants also assert Plaintiff cannot show they had fair warning that the actions alleged by Plaintiff were unconstitutional. Plaintiff contends Defendants are not entitled to protection against suit in their individual capacities.

Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities, so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1232 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002)). A government official must first prove that he was acting within his discretionary authority. Id. at 1233; Ray v. Foltz, 370 F.3d 1079, 1081-82 (11th Cir. 2004). A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority. Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006). Once the government official has shown he was acting within his discretionary authority, the burden shifts to the Plaintiff to show that the

18

Defendant is not entitled to qualified immunity. The Supreme Court has established a two-part test to determine the applicability of qualified immunity: First, the court must determine whether plaintiff's allegations, if true, establish a constitutional violation. Hope, 536 U.S. at 736, 122 S. Ct. at 2513. If, under the plaintiff's allegations, the defendants would have violated a constitutional right, then "the next, sequential step is to ask whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001); Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).

As noted above, Plaintiff has produced evidence sufficient to overcome Defendants' Motion for Summary Judgment on his excessive force claim against Defendant Dodson and his failure to protect claim against Defendant Smith. It was well-established in August 2003 that a prison official is not to subject an inmate to the use of excessive force, nor is a prison official entitled to ignore a known threat to an inmate's safety. Defendant Dodson is not immune from suit on Plaintiff's excessive force claim, nor is Defendant Smith immune from suit on Plaintiff's failure to protect claim, based on the qualified immunity defense.

It is unnecessary to address the remaining issue set forth in Defendants' Motion for Summary Judgment.

AO 72A
(Rev. 8/82)

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment (Doc. No. 180) be **GRANTED**, in part, and **DENIED**, in part. Plaintiff's claims against Defendants Cowart and Brown should be **DISMISSED**. Plaintiff's retaliation and due process claims against Defendant Dodson should be **DISMISSED**. Plaintiff's excessive force claim against Defendant Dodson and failure to protect claim against Defendant Smith should remain pending.

**SO REPORTED** and **RECOMMENDED**, this 6th day of June, 2007.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)